# EXHIBIT K



# GEORGETOWN LAW

**Abbe Smith**
Professor of Law

February 20, 2017

Office of Disciplinary Counsel
Board on Professional Responsibility
District of Columbia Court of Appeals
515 5th Street NW
Building A, Suite 117
Washington, DC 20001

To the Office of Disciplinary Counsel:

Please be advised that the below signed law professors, all of whom teach courses relating to legal ethics, are hereby filing a disciplinary complaint against District of Columbia bar member Kellyanne Conway, currently listed as a member of the bar under her name before marriage, Kellyanne E. Fitzpatrick,[1] under DC Rule of Professional Conduct 8.4(c) [hereinafter DC Rules].

As Rule 8.4(c) states, "It is professional misconduct for a lawyer to [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." This is an admittedly broad rule, as it includes conduct outside the practice of law and, unlike 8.4(b), the conduct need not be criminal. We are mindful of the Rule's breadth and aware that disciplinary proceedings under this Rule could lead to mischief and worse. Generally speaking, we do not believe that lawyers should face discipline under this Rule for public or private dishonesty or misrepresentations unless the

---

[1] Ms. Conway, née Fitzpatrick, was admitted to the DC bar on January 19, 1995 and is currently suspended for nonpayment of dues. Presumably, if she resumes payment she would be readmitted.

lawyer's conduct calls into serious question his or her "fitness for the practice of law," DC Rule 8.4, Comment 1, or indicates that the lawyer "lacks the character required for bar membership." DC Bar, Ethics Opinion 323, *Misrepresentation by an Attorney Employed by a Government Agency as Part of Official Duties*, at https://www.dcbar.org/bar-resources/legal-ethics/opinions/opinion323.cfm.

However, we believe that lawyers in public office—Ms. Conway is Counselor to the President—have a higher obligation to avoid conduct involving dishonest, fraud, deceit, or misrepresentation than other lawyers. Although the DC Rules contain no Comment specifically relating to 8.4(c), the American Bar Association's Model Rules of Professional Conduct (MR) make this point. MR 8.4(c), Comment 7 states that "Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers." *Cf.* DC Rule 1.11 (on the special conflict of interest rules for lawyers who have served in government).

It is not surprising that the Model Rules distinguish lawyers in public office from other lawyers. The ABA knows well the history of professional responsibility as an academic requirement in American law schools: following the Watergate scandal, which involved questionable conduct by a number of high-ranking lawyers in the Nixon administration, the ABA mandated that law students take such a course in order to graduate.

Some of the signers of this complaint practice in the District of Columbia and/or are members of the DC Bar. We feel compelled to file such a complaint under DC Rule 8.3(a), which states that "A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."

Those of us who do not practice in DC are members of other state and federal bars. We all believe it is critically important that lawyers in public office—especially those who act as spokespersons for the highest levels of government—be truthful.

The DC Bar has issued an Ethics Opinion on lawyers working in government in a non-representational capacity that supports this complaint. *See generally* Ethics Opinion 323, *Misrepresentation by an Attorney Employed by a Government Agency as Part of Official Duties*, https://www.dcbar.org/bar-resources/legal-ethics/opinions/opinion323.cfm. In addressing an inquiry about attorneys employed by an intelligence or national security agency who engage in clandestine activities, the Opinion distinguishes those government officials whose official duties require them to "act deceitfully" from other lawyers in government. Though the Opinion finds lawyers "whose duties require the making of misrepresentations as authorized by law as part of their official duties" do not violate Rule 8.4(c), the drafters emphasize the Opinion's narrow scope: it applies "only to misrepresentations made in the course of official conduct when the employee…reasonably believes that applicable law authorizes the misrepresentations."

Significantly, for purposes of this complaint, Ethics Opinion 323 makes plain that its conclusion in the above narrow context does not provide *"blanket permission for an attorney employed by government agencies to misrepresent themselves."* [Emphasis added] The drafters further explain:

> Nor does [the Opinion] authorize misrepresentation when a countervailing legal duty to give truthful answers applies…. And, of course, this opinion does not authorize deceit for non-official reasons, or where an attorney could not, objectively have a reasonable belief that applicable law authorizes the actions in question.

Ms. Conway's misconduct under DC Rule 8.4(c) is as follows:

- On several occasions, including in an interview on MSNBC in early February, 2017, Ms. Conway referred to the "Bowling Green Massacre" to justify President Donald Trump's executive order banning immigrants from seven overwhelmingly Muslim countries. Not only was there no "massacre" in Bowling Green, Kentucky (or Bowling Green, New York, for that matter), but Ms. Conway knew there was no massacre. Although Ms. Conway claimed it was a slip of the tongue and apologized, her actual words belie her having misspoken: "I bet it's brand-new information to people that President Obama had a six-month ban on the Iraqi refugee program after two Iraqis came here to this country, were radicalized, and were the masterminds behind the Bowling Green Massacre. Most people don't know that because it didn't get covered." *See generally* Clare Foran, *The Bowling Green Massacre that Wasn't*, THE ATLANTIC, February 3, 2017, at https://www.theatlantic.com/politics/archive/2017/02/kellyanne-conway-bowling-green-massacre-alternative-facts/515619/. Moreover, she cited the nonexistent massacre to media outlets on at least two other occasions. *See* Aaron Blake, *The Fix: Kellyanne Conway's 'Bowling Green Massacre' wasn't a slip of the tongue. She has said it before.* WASH. POST, February 6, 2017, at https://www.washingtonpost.com/news/the-fix/wp/2017/02/06/kellyanne-conways-bowling-green-massacre-wasnt-a-slip-of-the-tongue-shes-said-it-before/?utm_term=.b2de9c3f0582.

- Compounding this false statement, in that same MSNBC interview Ms. Conway also made a false statement that President Barack Obama had "banned" Iraqi refugees from coming into the United States for six months following the "Bowling Green Massacre." *Id.* However, President Obama did not impose a formal six-month ban on Iraqi refugees. He ordered enhanced screening procedures following what actually happened in Bowling Green—the arrest and prosecution of two Iraqis for attempting to send weapons and money to al-Qaeda in Iraq. The two men subsequently pled guilty to federal terrorism charges and were sentenced to substantial prison terms. *See* Glenn Kessler, *Fact Checker: Trump's facile claim that his refugee policy is similar to Obama's in 2011*, WASH. POST, January 29, 2017, at https://www.washingtonpost.com/news/fact-checker/wp/2017/01/29/trumps-facile-claim-that-his-refugee-policy-is-similar-to-obama-in-2011/?utm_term=.87f35b046de2.

- This was not the first time Ms. Conway had engaged in conduct involving "dishonesty, fraud, deceit, or misrepresentation." On January 22, 2017, on the NBC television show *Meet the Press*, Ms. Conway said that the White House had put forth "alternative facts" to what the news media reported about the size of Mr. Trump's inauguration crowd. She made this assertion the day after Mr. Trump and White House press secretary Sean Spicer accused the news media of reporting falsehoods about the inauguration and Mr. Trump's relationship with intelligence agencies. *See* Nicholas Fandos, *White House Pushes 'Alternative Facts.' Here are the Real Ones.* N.Y. TIMES, January 22, 2017, at https://www.nytimes.com/2017/01/22/us/politics/president-trump-inauguration-crowd-white-house.html. As many prominent commentators have pointed out, the phrase "alternative facts" is especially dangerous when offered by the President's counselor. Moreover, "alternative facts' are not facts at all; they are *lies*. Charles M. Blow, *A Lie by Any Other Name*, N.Y. TIMES, January 26, 2017, at https://www.nytimes.com/2017/01/26/opinion/a-lie-by-any-other-name.html.

- Ms. Conway has also misused her position to endorse Ivanka Trump products on February 9, 2017 in an interview on Fox News from the White House briefing room with the White House insignia visible behind her. While this conduct does not fall within DC Rule 8.4, it is a clear violation of government ethics rules, about which a *lawyer* and member of the Bar should surely know. Federal rules on conflicts of interest specifically prohibit using public office "for the endorsement of any product, service or enterprise, or for the private gain of friends, relatives or persons with whom the employee is affiliated in a nongovernmental capacity." The government's chief ethics watchdog denounced Conway's conduct in a letter to the White House. Richard Perez Pena, *Ethics Watchdog Denounces Conway's Endorsement of Ivanka Trump Products*, N.Y. TIMES, February 14, 2017, at https://www.nytimes.com/2017/02/14/us/politics/Kellyanne-Conway-ivanka-trump-ethics.html. *See also* DC Rule 1.11, Comment 2 (noting that, in addition to ethical rules, lawyers are subject to statutes and regulations concerning conflict of interest and suggesting that, given the many lawyers who work in the federal or local government in the District of Columbia, "particular heed must be paid to the federal conflict-of interest statutes.")

We do not file this complaint lightly. In addition to being a member of the DC Bar, Ms. Conway is a graduate of the George Washington University Law School, one of the District's premier law schools. We believe that, at one time, Ms. Conway, understood her ethical responsibilities as a lawyer and abided by them. But she is currently acting in a way that brings shame upon the legal profession. As the Preamble to the Model Rules states, a lawyer plays an important role as a "public citizen" in addition to our other roles.

If Ms. Conway were not a lawyer and was "only" engaging in politics, there would be few limits on her conduct outside of the political process itself. She could say and do what she wished and still call herself a politician. But she is a lawyer. And her conduct, clearly intentionally violative of the rules that regulate her professional status, cries out for sanctioning by the DC Bar.

Respectfully submitted,

John Bickers
Professor of Law
Northern Kentucky University

Susan Brooks
Professor of Law
Drexel University

Lawrence Fox
Visiting Lecturer in Law
Yale Law School

Bennett Gershman
Professor of Law
Pace University

Justin Hansford
Associate Professor of Law
Saint Louis University

Vida Johnson
Visiting Professor of Law
Georgetown University

Jennifer Kinsley
Associate Professor of Law
Northern Kentucky University

Catherine Klein
Professor of Law
Catholic University

William Montross
Visiting Professor of Law
University of the District of Columbia

Russell Pearce
Professor of Law
Fordham University

Ilene Seidman
Professor of Law
Suffolk University

David Singleton
Associate Professor of Law
Northern Kentucky University

Abbe Smith
Professor of Law
Georgetown University

Michael Tigar
Professor of Law Emeritus
American University
Duke University

Ellen Yaroshefsky
Professor of Law
Hofstra University

5 | P a g e