IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: LARRY KLAYMAN | } } } | |
| Petitioner | } } } } } } | **Case Number: 3:22-mc-14-TJC-JRK** |

---

**LARRY KLAYMAN'S NOTICE OF COMPLIANCE WITH LOCAL RULE 2.04**

Petitioner Larry Klayman ("Mr. Klayman") informs the clerk that he filed a status report on November 10, 2025, Exhibit A, which he understands to satisfy the requirement under Local Rule 2.04(b)(1) to "inform the clerk within fourteen days after the lawyer is convicted of a felony or loses good standing with, is publicly disciplined by, is disbarred on consent from, or has resigned from, any bar.

Furthermore, pursuant to Local Rule 2.04(b)(2), Mr. Klayman will be petitioning the Chief Judge of this Court for relief not to automatically suspend him on or before November 27, 2025.

Dated: November 20, 2025

Respectfully submitted,

By: */s/ Larry Klayman*_____
Larry Klayman, Esq.
Klayman Law Group P.A.
7050 W. Palmetto Park Rd

Boca Raton, FL, 33433
Tel: 561-558-5536 cell
leklayman@gmail.com

*Pro Se*

## <u>CERTIFICATE OF SERVICE</u>

I, Larry Klayman, hereby certify that on this day, November 20, 2025 a copy of the foregoing was filed electronically and served on the clerk of the Court via email and mail at:

attorney_admissions_orl@flmd.uscourts.gov
401 West Central Boulevard
Orlando, Florida 32801

_____*/s/ Larry Klayman*_____
Larry Klayman

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: LARRY KLAYMAN | } } } | |
| Petitioner | } | **Case Number: 3:22-mc-14-TJC-JRK** |
|  | } } } } | |

## LARRY KLAYMAN'S STATUS REPORT

Petitioner Larry Klayman ("Mr. Klayman") informs the Court that on November 6, 2025, the Supreme Court of Florida issued the attached order adopting the report of the Referee J. Lee Marsh and suspended Mr. Klayman from the practice of law in Florida for twenty-four (24) months.

The underlying order of suspension from the District of Columbia Court of Appeals upon which the Supreme Court of Florida's November 6, 2025 reciprocal discipline order is based is still being contested in two ongoing matters. The first is on appeal to the District of Columbia Court of Appeals ("DCCA") in *Klayman v. Sataki et al*, 24-cv-00226 (D.C. Ct. App.) (the "Rule 60 Complaint") and oral argument is being scheduled in that matter. The second is a matter styled *Klayman v. Sataki,* 50-2022-CA-010491 (15th Jud. Cir. Fla.) where Mr. Klayman has  challenged the fraud of the Complainant in the underlying

disciplinary action. Both actions would moot out the order of suspension from the DCCA, and thus, the November 6, 2025 reciprocal discipline order from the Supreme Court of Florida.

Furthermore, Mr. Klayman will be filing a Motion for Rehearing on the Supreme Court of Florida's November 6, 2025 order on or before November 21, 2025, unless an extension is obtained. He is also filing a motion to stay the Supreme Court of Florida's suspension order until the Motion for Rehearing is heard and decided, with possible appeal, if necessary, to the United States Supreme Court. Mr. Klayman is also filing shortly other litigation under the authority set forth by the U.S. Court of Appeals for the District of Columbia Circuit in in *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023), which expressly found that selective prosecutorial First and Fifth Amendment viewpoint discrimination, which is entirely analogous to what Mr. Klayman has suffered and continues to suffer, is unconstitutional and illegal, notwithstanding that the alleged acts which gave rise to the flawed suspension order are time barred, particularly since The Florida Bar not only stacked proceedings, illegal under *Fla. Bar v. Rubin*, 362 So. 2d 12 (Fla. 1978), but also because the underlying Sataki complaint was filed in 2010 before The Florida Bar as well as the Pennsylvania Bar. Both bars dismissed and/or took no action over 14 years ago. The Supreme Court of Pennsylvania stayed its consideration of

reciprocal discipline, pending Mr. Klayman's full exhaustion of remedies in the above-styled cases.

There are also important client interests - as well as the livelihood and well-being of Mr. Klayman and his family - involved, and thus Mr. Klayman is exhausting all remedies. It is again noted that the underlying orders are decades old and he has been a member continuously in good standing with The Florida Bar for going on a half century, since he was admitted by the Supreme Court of Florida on December 7, 1977.

Dated: November 10, 2025                    Respectfully submitted,

                                           By: */s/ Larry Klayman*_____
                                           Larry Klayman, Esq.
                                           Klayman Law Group P.A.
                                           7050 W. Palmetto Park Rd
                                           Boca Raton, FL, 33433
                                           Tel: 561-558-5536 cell
                                           leklayman@gmail.com

                                           *Pro Se*

# Supreme Court of Florida

_____

No. SC2023-1219
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**LARRY ELLIOT KLAYMAN,**
Respondent.

November 6, 2025

PER CURIAM.

We have for review a report of referee recommending that Respondent, Larry Elliot Klayman, be found guilty of professional misconduct and suspended from the practice of law.  Klayman challenges the referee's report in its entirety.[1]  We hereby approve the referee's findings of fact and recommendations as to guilt and sanctions.  Accordingly, Klayman is suspended from the practice of law for a period of two years and ordered to pay the Bar's costs in the amount of $4,536.93.

_____

1.  We have jurisdiction.  *See* art. V, § 15, Fla. Const.

## BACKGROUND

On August 29, 2023, The Florida Bar filed a Formal Complaint for Reciprocal Discipline against Klayman, alleging that he had been suspended from practicing law in the District of Columbia through a pair of orders issued by the D.C. Court of Appeals.  The Bar alleged that under Rule Regulating The Florida Bar 3-4.6 (Discipline by Foreign or Federal Jurisdiction; Choice of Law), the D.C. suspension orders constitute conclusive proof of misconduct for purposes of a Florida Bar discipline proceeding.

Because the underlying conduct described in the complaint took place several years before Klayman was disciplined in D.C., Klayman argued that this disciplinary proceeding was time-barred on statute of limitations and laches grounds.  On May 17, 2024, following a hearing on sanctions, the referee filed a report, concluding that the proceeding was not time-barred and that the D.C. Court of Appeals' suspension orders constituted conclusive proof of Klayman's guilt.  For sanctions, the referee recommended suspending Klayman for a period of two years, explaining that the aggravating circumstances warrant a harsher sanction than that imposed by the D.C. Court of Appeals.

*Referee's Findings as to Count One*

The referee made the following factual findings regarding Count One of the Bar's complaint, which addressed Klayman's 90-day suspension imposed by the D.C. Court of Appeals in 2020.

In 1994, Klayman founded an organization called Judicial Watch and served as its in-house counsel until 2003. During his time with the organization, an employee named Sandra Cobas complained to Judicial Watch about employment conditions, and Klayman provided legal advice to Judicial Watch about Cobas' complaints. Cobas later filed a lawsuit against Judicial Watch in the Florida court system, but her case was dismissed. Then, without seeking consent from Judicial Watch to represent Cobas, Klayman entered an appearance on Cobas' behalf and filed a motion to vacate the court's dismissal order. He later filed a notice of appeal and an appellate brief on Cobas' behalf.

In a second case, Klayman, acting as Judicial Watch's chairman and general counsel in 2002, solicited donations for the organization from a donor named Louise Benson. Benson later sued Judicial Watch to recover her donated money, and Klayman

- 3 -

entered an appearance on her behalf—again without seeking consent from Judicial Watch.

In a third case, Klayman prepared a representation agreement on behalf of Judicial Watch in 2001 to represent a new client named Peter Paul. Paul later sued Judicial Watch for breach of the agreement, and Klayman entered an appearance on Paul's behalf—again without seeking consent from Judicial Watch.

Klayman's conduct in the above three cases was found to be violative of D.C. Rule of Professional Conduct 1.9 (Conflict of Interest) and resulted in Klayman being suspended for 90 days in D.C.

*Referee's Findings as to Count Two*

The referee made the following factual findings regarding Count Two of the Bar's complaint, which addressed Klayman's 18-month suspension imposed by the D.C. Court of Appeals in 2022. In 2010, Klayman began representing Elham Sataki in a sexual harassment suit. Klayman and Sataki agreed to a 40% contingency fee agreement with no retainer, but Klayman later unilaterally increased his fee to 50%. When negotiations with the defendant failed, Klayman encouraged Sataki to move from D.C. to

- 4 -

Los Angeles, and he paid for her relocation and living expenses. He and Sataki agreed that he would be reimbursed out of any award she won in the case, in addition to his fee.

Klayman filed a civil suit on Sataki's behalf against her supervisors and the individual accused of harassing her, but while Sataki wanted the matter to be handled quietly, Klayman engaged in a public strategy designed to draw attention to the case. He sued both the governing board of the company and the Broadcasting Board of Governors, which included several prominent figures, despite Sataki insisting that she wanted to focus only on her supervisors and the individual who harassed her. Klayman also wrote numerous public articles about the case in which he revealed confidential information. Sataki was against publication of the articles, but she agreed to the public approach after Klayman told her it would be beneficial to her case.

In April 2010, Klayman began to repeatedly express strong feelings for Sataki. When Sataki told him they could only be friends, he persisted. He told her that his feelings for her rendered him nonfunctional as a lawyer and that she would get better legal representation from someone else. Sataki wrote Klayman a letter

- 5 -

telling him to withdraw the remaining lawsuit, but Klayman did not dismiss the entire case and continued acting on Sataki's behalf. Sataki wrote Klayman another letter stating that his services had been terminated.  She later wrote him again and reiterated that he was not representing her in any capacity, but he sent her a reply stating that he could not allow her legal rights to be lost.  He then filed a notice of appeal in Sataki's civil case without speaking to her about whether she wanted to file an appeal.

During the hearing before the referee, Klayman denied having romantic intentions toward Sataki and insisted that he had consulted with Sataki about all actions taken on her case.  Klayman also disputed the existence of a contingency fee agreement, and he denied pressuring Sataki to pursue publicity.

This conduct was found to be violative of numerous D.C. Rules of Professional Conduct and resulted in Klayman being suspended for a period of 18 months in D.C.

### *Referee's Recommendations as to Guilt and Sanctions*

The referee found that Klayman admitted to the disciplinary orders imposed against him by the D.C. Court of Appeals and concluded that for purposes of a Florida Bar reciprocal discipline

proceeding, those orders are final and are conclusive proof of misconduct.  The referee found no paucity of proof in the D.C. orders, no lack of notice or opportunity to be heard in D.C., and no other grave reason suggesting that this Court should elect not to be bound by the foreign judgments.

Based on the above findings, the referee recommends that Klayman be found guilty of the violations set forth in the complaint. For Count One, the referee recommends finding Klayman guilty of violating D.C. Rule of Professional Conduct 1.9 (Conflict of Interest). For Count Two, the referee recommends finding Klayman guilty of violating D.C. rules 1.2(a) (lawyer shall abide by client's decisions as to objectives of representation and shall consult with client as to means used); 1.4(b) (lawyer shall appropriately explain matter to client); 1.5(b) (requiring written agreement regarding representation); 1.5(c) (contingent fee agreement shall be in writing); 1.6(a)(1) and (a)(3) (lawyer shall not knowingly reveal a confidence or secret of a client or use such for lawyer's advantage); 1.7(b)(4) (lawyer shall not represent client if lawyer's professional judgment will be or reasonably may be adversely affected by the lawyer's own

personal interests); and 1.16(a)(3) (discharged lawyer shall withdraw from representation).

Regarding discipline, the referee recommends suspending Klayman for two years. The referee found several aggravators, including: (1) dishonest or selfish motive; (2) pattern of misconduct; (3) multiple offenses; (4) bad faith obstruction of the disciplinary proceeding by failing to comply with the rules or orders of a disciplinary agency; (5) submission of false evidence; (6) refusal to acknowledge the wrongful nature of the conduct; and (7) substantial experience in the practice of law. The referee also found that Klayman had a prior disciplinary offense, and while Klayman argued that his prior discipline was for minor misconduct, the referee explained that the consent judgment in that case included admissions to violations of rules that contemplated more than minor misconduct. The referee also found two mitigating factors: character and reputation (established by witness testimony at the sanction hearing); and remoteness of the prior offense.

## ANALYSIS

In Bar discipline cases, this Court conducts a limited review of a referee's findings of fact. If a referee's findings are supported by

competent, substantial evidence, we will not reweigh the evidence or substitute our own judgment for that of the referee. *Fla. Bar v. Schwartz*, 284 So. 3d 393, 396 (Fla. 2019). For recommendations as to guilt, the referee's factual findings must be sufficient under the applicable rules to support the referee's conclusions. *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005). The party challenging a referee's findings of fact or recommendations as to guilt has the burden to show "that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

Under Rule Regulating The Florida Bar 3-4.6, which addresses reciprocal discipline proceedings, whenever a foreign jurisdiction disciplines a lawyer who is also licensed in Florida, this Court has jurisdiction to discipline the same lawyer in Florida for the same misconduct. And "when an attorney is adjudicated guilty of misconduct by the disciplinary agency of another jurisdiction, the adjudication serves as conclusive proof of commission of the misconduct charged." *Fla. Bar v. Kandekore*, 766 So. 2d 1004, 1007 (Fla. 2000). While this Court is not automatically bound by

an out-of-state determination of guilt, we will only elect not to

accept such foreign judgment if the accused attorney shows

> that the proceeding in the foreign state was so deficient
> or lacking in notice or opportunity to be heard, that there
> was such a paucity of proof, or that there was some other
> grave reason which would make it unjust to accept the
> foreign judgment as conclusive proof of guilt of the
> misconduct involved.

*Id.* (quoting *Fla. Bar v. Wilkes*, 179 So. 2d 193, 198 (Fla. 1965)).

Klayman argues that the D.C. Court of Appeals failed to

provide notice and opportunity to be heard.  However, he

participated in every stage of the D.C. proceedings and has not

shown that he was without notice or opportunity to be heard at any

point in those proceedings.  Thus, this Court would only elect not to

be bound by the D.C. orders if "there was such a paucity of proof,

or . . . some other grave reason which would make it unjust to

accept the foreign judgment as conclusive proof of guilt."  *Id.*

*Whether Paucity of Proof in the D.C. Orders Would Make It Unjust to
Accept the Foreign Judgments as Conclusive Proof of Klayman's Guilt*

Klayman argues that the D.C. disciplinary proceedings failed

to establish proof of guilt of the charged misconduct.  He insists

that they were sham proceedings initiated as retaliation for his

conservative watchdog efforts against prominent liberal figures.

But whatever the circumstances may have been, the violations found in the D.C. Court of Appeals' 2020 and 2022 suspension orders are not without support in the record.

Regarding Klayman's conflict-of-interest violations, the record contains ample evidence that Klayman represented three clients in actions against Judicial Watch, an organization for which he had previously served as chairman and in-house counsel, and that he did so without first obtaining consent from Judicial Watch to represent the clients.

Regarding the misconduct involving Klayman's representation of Sataki, the record includes writings from Klayman in which he expressed to Sataki that his emotions had rendered him nonfunctional as a lawyer. The record also includes evidence that Klayman continued to represent Sataki after he made such statements, that he continued to act on her behalf and did not withdraw from representation after she tried to terminate his services, and that he wrote and published articles revealing confidential information about her case even after she terminated representation and stopped contacting him.

Furthermore, the record contains evidence that Klayman inappropriately explained legal matters to Sataki—filing motions and pleadings without her consent, engaging in strategies to which she was opposed, and repeatedly communicating strong feelings for her while explaining her legal options. All these actions support the D.C. Court of Appeals' conclusion that Klayman did not appropriately explain his client's legal options.

Regarding the found contingency fee violations, Klayman argues that he had never been working for a contingency fee, but the record contains emails between Sataki and Klayman in which she refers to an agreed 40% contingency fee and he demands a 50% fee based on his time and expense.

Klayman claims the referee in this case has exaggerated the D.C. suspension orders. He argues that the referee describes Klayman's feelings for Sataki as romantic or sexual, where the D.C. Court of Appeals only stated that Klayman had strong feelings for Sataki. But however the referee describes Klayman's behavior, it is the D.C. orders themselves—not the referee's summary of those orders—that serve as proof of Klayman's guilt. Even assuming the referee overstated Klayman's feelings for Sataki, Klayman was not

disciplined in D.C. for any misconduct of a sexual nature, and the referee has not recommended that Klayman be found guilty of any misconduct not included in the D.C. suspension orders.

*Whether Some Other Grave Reason Would Make It Unjust to Accept the Foreign Judgments as Conclusive Proof of Klayman's Guilt*

Because Klayman was given notice and opportunity to be heard in the D.C. disciplinary proceedings, and because the D.C. Court of Appeals' suspension orders do not have a paucity of proof such that we would decline to accept them as conclusive proof of guilt, we would only elect not to be bound by the foreign judgments if there is "some other grave reason which would make it unjust to accept the foreign judgment as conclusive proof of guilt of the misconduct involved." *Kandekore*, 766 So. 2d at 1007.

To that end, Klayman argues that the length of time between the underlying conduct and the initiation of disciplinary proceedings in D.C. is a grave reason for Florida not to be bound by the D.C. suspension orders.  But this is a reciprocal proceeding, and D.C. has no statute of limitations for attorney discipline cases. Members of the D.C. Bar, including Klayman, are on notice that their misconduct can subject them to discipline in that jurisdiction,

- 13 -

even decades after the underlying conduct took place.  The D.C.
disciplinary proceedings were therefore not conducted in an
untimely manner.  Because the D.C. proceedings operated in
accordance with governing law, we cannot say that it would be
unjust to accept the D.C. suspension orders as conclusive proof of
Klayman's guilt, even if similar charges would have had to be
brought sooner in a case arising in Florida.

### *Whether This Case Is Time-barred*

Klayman argues that even if the D.C. suspension orders were
not so defective that this Court would decline to accept them for
purposes of reciprocal discipline, this Florida disciplinary
proceeding is time-barred.  He relies on Rule Regulating The Florida
Bar 3-7.16(a) (Limitation on Time to Open Investigation), which
generally operates as a statute of limitations for lawyer discipline
proceedings in Florida.  Rule 3-7.16(a)(1) provides: "The Florida Bar
must open an investigation initiated by The Florida Bar within 6
years from the time the matter giving rise to the investigation is
discovered or, with due diligence, should have been discovered."

Notably, this case did not arise from a Florida Bar
investigation following an inquiry or complaint filed by a

complaining witness; it arose as a reciprocal discipline proceeding initiated because the Bar learned of Klayman's suspension in D.C. A Florida Bar reciprocal discipline cause of action does not accrue until discipline has been imposed by a foreign jurisdiction.  This is based on the general rule in Florida that "[a] cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (2023); *see R.R. v. New Life Comm. Church of CMA, Inc.*, 303 So. 3d 916, 921 (Fla. 2020).

In a reciprocal discipline proceeding, the elements constituting the cause of action are the foreign judgments on which the reciprocal discipline is based, not the underlying conduct.  Given that the D.C. orders giving rise to the present cause of action were issued in 2020 and 2022, and Klayman notified the Bar of those orders shortly after each order was issued, this reciprocal proceeding—opened in 2023—was initiated in a timely manner.

Notably, the referee analyzed the applicability of *Merkle v. Robinson*, 737 So. 2d 540 (Fla. 1999), in which this Court articulated a test for determining choice of law questions.  Klayman argues that *Merkle* is inapplicable because the case specifically addressed tort actions, not lawyer discipline.  But more broadly,

- 15 -

*Merkle* does not apply because the significant relationship test articulated in *Merkle* is geared toward resolving conflict-of-law issues.  The timeliness of this reciprocal disciplinary proceeding turns on claim accrual, not on a conflict-of-law analysis.  Thus, we need not engage in a significant relationship analysis to determine when this cause of action accrued.

## DISCIPLINE

We now turn to the referee's recommendation to impose a two-year suspension for Klayman's misconduct.  "Prior to making a recommendation as to discipline, referees must consider the Standards for Imposing Lawyer Sanctions, which are subject to aggravating and mitigating circumstances, and this Court's existing case law." *Fla. Bar v. Strems*, 357 So. 3d 77, 90 (Fla. 2022).

Our review of a referee's recommendation on discipline is broader than our review of a referee's findings of fact, for it is ultimately this Court's responsibility to determine the appropriate discipline.  *Fla. Bar v. Alters*, 260 So. 3d 72, 83 (Fla. 2018) (citing *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989)); *see also* art. V, § 15, Fla. Const.  That said, we have recognized that the referee "is in a unique position to assess the credibility of witnesses, and

- 16 -

his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." *Fla. Bar v. Tobkin*, 944 So. 2d 219, 224 (Fla. 2006) (quoting *Fla. Bar v. Thomas*, 582 So. 2d 1177, 1178 (Fla. 1991)).  Notably, in a reciprocal discipline proceeding premised on an adjudication of guilt in a foreign jurisdiction, this Court is free to impose a more severe punishment than the punishment imposed by the sister state.  *Fla. Bar v. Hagendorf*, 921 So. 2d 611, 614 (Fla. 2006).

*Standards*

In looking at the Standards, we find support for suspension as the presumptive sanction in this case.  For Standard 4.2(b), the referee found that Klayman knowingly revealed information about his representation of Sataki, causing her injury or potential injury.  For Standard 4.3(b), the referee found that Klayman knowingly failed to avoid conflicts of interest, causing injury or potential injury to his clients.  Finally, for Standard 7.1(b), the referee found that Klayman knowingly engaged in conduct that was violative of duties he owed as a professional, causing injury or potential injury to his clients, the public, or the legal system.  Klayman does not assert

- 17 -

that the referee erred in finding these Standards applicable, and we
conclude that the referee did not err.

*Aggravating and Mitigating Factors*

"Like other factual findings, a referee's findings of mitigation
and aggravation carry a presumption of correctness and will be
upheld unless clearly erroneous or without support in the record."
*Fla. Bar v. Scheinberg*, 129 So. 3d 315, 319 (Fla. 2013) (quoting
*Germain*, 957 So. 2d at 621). A referee's finding that an aggravator
or mitigator applies, or failure to find that an aggravator or
mitigator applies, is due the same deference. *Id.* Accordingly, the
party challenging a referee's finding of aggravation or mitigation
"must establish there is a lack of evidence in the record to support
such findings or that the record clearly contradicts the referee's
conclusions." *Fla. Bar v. Horton*, 332 So. 3d 943, 949 (Fla. 2019)
(quoting *Fla. Bar v. Glueck*, 985 So. 2d 1052, 1056 (Fla. 2008)).

Here, the referee found several aggravating factors, including:
dishonest or selfish motive (Standard 3.2(b)(2)); pattern of
misconduct (Standard 3.2(b)(3)); multiple offenses (Standard
3.2(b)(4)); bad faith obstruction of the disciplinary proceeding by
intentionally failing to comply with rules or orders of the

- 18 -

disciplinary agency (Standard 3.2(b)(5)); submission of false evidence, false statements, or other deceptive practices during the disciplinary process (Standard 3.2(b)(6)); refusal to acknowledge the wrongful nature of the conduct (Standard 3.2(b)(7)); and substantial experience in the practice of law (Standard 3.2(b)(9)).  The referee also found two mitigators: character or reputation (Standard 3.3(b)(7)); and remoteness of prior offenses (Standard 3.3(b)(13)).

Klayman does not argue that the record lacks competent, substantial evidence in support of the aggravating factors.  Instead, he argues that the referee should have afforded greater weight to the character and reputation mitigator and should have found absence of a prior disciplinary record as an additional mitigator.

Regarding the first argument, while Klayman takes issue with how the referee describes his character and reputation, the referee nevertheless afforded significant weight to this mitigating factor, going so far as to state that Klayman's misconduct would warrant a greater sanction were it not for the significant character and reputation evidence presented on his behalf.  Thus, Klayman has not shown that the referee erred in the degree of weight afforded to this mitigating factor.

As to whether the referee should have found absence of a prior disciplinary record as an additional mitigator, Klayman's argument is that while he has been disciplined in the past, it was long ago and only for minor misconduct.  But in the prior instance, Klayman was publicly reprimanded after a formal complaint was filed, and he entered a consent judgment to violating rules that contemplated more than minor misconduct.  Thus, the referee correctly found that Klayman's prior discipline was remote (a mitigating factor found by the referee), but it is not accurate to say Klayman has no prior discipline whatsoever.

Klayman further argues that the referee should have found two other mitigators: that Klayman lacked a dishonest or selfish motive and that he had a cooperative attitude during the disciplinary proceeding.  But Klayman's explanations and scant excerpts from the record fail to establish that the referee clearly erred in declining to find that Klayman lacked a dishonest or selfish motive or that he had a cooperative attitude throughout the proceeding.  *See Fla. Bar v. Herman*, 8 So. 3d 1100, 1106 (Fla. 2009) ("The fact that there is some evidence in the record to support

a finding that a mitigating factor might apply does not mean that the referee should have necessarily found it applicable.").

*Case Law*

Because the Standards "do not suggest the appropriate length of a suspension, the Court examines caselaw to determine whether the referee's recommendation . . . has a reasonable basis." *Fla. Bar v. Maurice*, 955 So. 2d 535, 541 (Fla. 2007).

In *Herman*, 8 So. 3d at 1106, an attorney was suspended for 18 months for failing to get consent from a client before starting a business that directly competed with the client's business. *Herman* was decided before we began to move toward imposing harsher sanctions, but even so, the lawyer in *Herman* had no prior discipline, had fewer aggravating factors, and had only engaged in a single conflict-of-interest violation, whereas Klayman committed numerous ethical violations, including three conflict-of-interest violations across separate cases.

In *Florida Bar v. Rush*, 361 So. 3d 796, 804 (Fla. 2023), we suspended an attorney for three years based in part on his "repeated failure to accede to [a client]'s clear directives and his unwillingness to put his client's interests over his own pecuniary

gain." Klayman engaged in similar behavior. However, a lesser sanction than that imposed in *Rush* is appropriate here, for the referee did not find that Klayman's misconduct while representing Sataki was motivated by pecuniary gain, and as noted above, the referee found significant character and reputation evidence in mitigation, justifying a lesser sanction.

Ultimately, the relevant Standards and existing case law support the referee's recommendation for a two-year suspension, and while that exceeds the discipline imposed by the D.C. Court of Appeals, this Court is free to impose a harsher sanction in a reciprocal discipline proceeding than that imposed in the foreign jurisdiction. For these reasons, we approve the referee's recommendations and suspend Klayman for two years.

## CONCLUSION

For the reasons stated above, we approve the referee's findings of fact and recommendations on guilt and sanctions. Accordingly, Larry Elliot Klayman is hereby suspended from the practice of law for two years. The suspension will be effective 30 days from the filing of this opinion so that Klayman can close out his practice and protect the interests of existing clients. If Klayman notifies this

Court in writing that he is no longer practicing and does not need the 30 days to protect existing clients, the Court will enter an order making the suspension effective immediately.  Klayman shall fully comply with rule 3-5.1(h) and, if applicable, rule 3-6.1.  Further, he shall accept no new business from the date this opinion is filed until he is reinstated.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Larry Elliot Klayman in the amount of $4,536.93, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, and Mark Lugo Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida,

for Complainant

Robert M. Klein of Freeman Mathis & Gary, LLP, Miami, Florida,

for Respondent